**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| YOUNG MAN KIM, KENNETH RHEE a/k/a KUN Y RHEE, KKR PARTNERS, INC., individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>     v.<br><br>M&T BANK,<br><br>     Defendant. | Civil Action No. 17-11810 (ES) (MAH)<br><br>MEMORANDUM |

**SALAS, DISTRICT JUDGE**

Before the Court is Defendant M&T Bank's ("M&T" or "Defendant") motion to dismiss Plaintiffs Young Man Kim, Kenneth Rhee, and KKR Partners, Inc.'s ("KKR") (together, "Plaintiffs") Complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b). (D.E. No. 11). The Court has jurisdiction under 28 U.S.C. § 1332(a). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b). For the reasons below, the Court GRANTS M&T's motion and dismisses Plaintiff's Complaint *without prejudice.*

*Background.* The Court writes primarily for the parties and provides only those facts necessary for its analysis.[1] On or about February 15, 2006, Kim, Rhee, and Sei-Jun Park formed KKR and each acquired a 33.33% ownership interest. (D.E. No. 1 ("Compl.") ¶ 15). The purpose of KKR was to own and operate one or more dry-cleaning establishments. (*Id.*). In November

---

[1] The Court must accept Plaintiffs' factual allegations as true for purposes of resolving the pending motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012).

1

2013, "after being solicited through various promotional efforts by M&T Bank," Plaintiffs "appl[ied] for a business loan" at one of M&T's New Jersey branches. (*Id.* ¶ 17). On December 6, 2013, KKR executed a form M&T "Term Note," which set out the terms of a $150,000 loan from M&T. (*Id.* ¶ 18). That same date, Rhee and Kim, on behalf of KKR, also executed a "Business Access Line of Credit Note" and a "Loan Agreement." (*Id.* ¶¶ 23, 25). Also on December 6, 2013, Kim executed an "Unlimited Guarant[y]" with M&T, in which Kim promised to guarantee the payment of KKR's loan. (*Id.* ¶ 27; D.E. No. 1-4, Compl. Ex. C).

Each of these documents contained an identical forum selection clause (together, the "forum selection clauses"), which stated:

> The [Guarantor or Borrower] irrevocably submits to the *nonexclusive jurisdiction of any Federal or state court sitting in New Jersey*, over any suit, action or proceeding arising out of or relating to this [agreement]. The [Guarantor or Borrower] irrevocably waives, to the fullest extent it may do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum.

(*Id.* ¶¶ 20, 23, 25, 28) (emphasis added).

KKR defaulted on the loan, and M&T subsequently sued KKR, Rhee, and Kim in the Supreme Court of New York, Erie County (the "Initial Loan Action"). (*Id.* ¶ 29). KKR and Rhee raised the defense of lack of personal jurisdiction, but "due to the lack of funds available for defense these parties lost their challenge and judgment was entered against them . . . in the amount of $150,458.89." (*Id.* ¶ 30). Rhee then filed for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey. (*Id.* ¶ 31). As for Kim, Plaintiffs allege that M&T failed to serve Kim with the complaint in that suit as a "strategic decision . . . to divide the resources available to the joint defendants to oppose the Initial Loan Action." (*Id.* ¶ 32).

2

M&T subsequently filed a separate "guarantee action" against Kim in the Supreme Court of New York, Erie County (the "Guarantee Action"). (*Id.* ¶¶ 34-35). According to Plaintiffs, the "Guarantee Action was filed separately by M&T Bank from the Initial Loan Action so that the defendants could not share lawyers and expenses, and thereby mount a more economic, joint defense." (*Id.* ¶ 36). Kim moved to dismiss the Guarantee Action for lack of personal jurisdiction and an inconvenient forum. (*Id.* ¶ 39). Kim's counsel asked M&T's counsel if M&T would waive oral argument on the personal-jurisdiction motion "as a courtesy," and M&T refused. (*Id.* ¶ 42). Plaintiffs allege that M&T's refusal was motivated by a desire to "increase the cost of litigation," so Kim would have to spend "many times" more than M&T to resolve the personal-jurisdiction issue. (*Id.*). The state court granted Kim's motion and dismissed the case. (*Id.* ¶ 46).

Plaintiffs filed the instant putative class-action Complaint against M&T on November 18, 2017. (*Id.* at 1). Plaintiffs seek to represent the class of "persons and entities residing in the State of New Jersey who entered into any loan or guarantor agreement with M&T Bank and who were not informed of M&T Bank's intent to file suit in New York and/or Buffalo in the event of a dispute." (*Id.* ¶ 48). Plaintiffs allege violations of the New Jersey Consumer Fraud Act (Count I), negligence and gross negligence (Count II), equitable fraud (Count III), fraud in the inducement (Count IV), negligent misrepresentation (Count V), and unjust enrichment (Count VI). (*Id.* ¶¶ 55-90). For each claim, Plaintiffs seek (among other things) "[r]escission of all Loan Documents and Unlimited Guarant[y] . . . rescission of all similar M&T Bank loan documents and guarantees" and a "declaration that all loan agreements and guarantees subject to this Count entered into by Plaintiffs and Class members are void and have no legal effect." (*Id.* at 12-19).

On February 5, 2018, M&T moved to dismiss Plaintiffs' Complaint under Federal Rules of Civil Procedure 12(b)(1), (12)(b)(6), and 9(b). (D.E. No. 11-1 ("Def. Mov. Br.")). Plaintiffs

opposed M&T's motion on March 19, 2018.  (D.E. No. 14 ("Pls. Opp. Br.")).  M&T submitted a reply on April 6, 2018.  (D.E. No. 15 ("Def. Reply Br.")).  The matter is now ripe for resolution.

*Federal Rule of Civil Procedure 12(b)(6).*  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

"When reviewing a motion to dismiss, [a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom."  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  But the court need not accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  "[A] document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

***Standing.*[2]**  M&T argues that Plaintiffs' Complaint should be dismissed because "Plaintiffs' claims seek recovery for harm to the corporate entity, KKR; therefore, the individual Plaintiffs, Kim and Rhee, lack standing to pursue them." (Def. Mov. Br. at 11). Plaintiffs' response is twofold: (i) "the claims brought by Kim and Rhee are not derivative of any claims KKR may have had"; and (ii) "even if the Court were to find that Plaintiffs' claims were derivative, Kim and Rhee may assert those claims because KKR is insolvent." (Pls. Opp. Br. at 7).

"It is well established that, absent a direct individual injury, [a] . . . shareholder of a corporation lacks standing to sue for an injury to the corporation." *Meade v. Kiddie Acad. Domestic Franchising, LLC*, 501 F. App'x 106, 108 (3d Cir. 2012) (citation omitted); *In re Kaplan*, 143 F.3d 807, 811-12 (3d Cir. 1998) ("The derivative injury rule holds that a shareholder (even a shareholder in a closely-held corporation) may not sue for personal injuries that result directly from injuries to the corporation."). Rhee's claims all involve injuries stemming from agreements between KKR and M&T, rather than actions against him in his individual capacity. (*See* Compl. ¶¶ 21-26 (alleging that Rhee signed the Term Note, Business Access Line of Credit Note, and the Loan Agreement "on behalf of KKR")). Rhee therefore lacks standing to pursue this suit. *See Meade*, 501 F. App'x at 107-08 (holding that shareholder who signed agreement on behalf of corporation lacked standing to sue for injuries to corporation stemming from the agreement). For

---

[2]  "A motion to dismiss for want of standing is properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (cleaned up). "A district court has to first determine, however, whether a Rule 12(b)(1) motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Id.* at 358 (citations omitted). M&T filed its motion to dismiss before it filed any answer to the Complaint or otherwise presented competing facts. "Its motion was therefore, by definition, a facial attack." *Id.*; *see also Askew v. Church of the Lord Jesus Christ*, 684 F.3d 413, 417 (3d Cir. 2012) ("As the defendants had not answered and the parties had not engaged in discovery, the first motion to dismiss was facial."). "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* (citations and internal quotation marks omitted). "Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party." *Id.* (citation omitted).

these same reasons, Kim also lacks standing to assert any claims stemming from agreements between KKR and M&T (i.e., the Term Note, Business Access Line of Credit Note, and the Loan Agreement).

"The derivative injury rule, however, will not bar [a plaintiff's] claims if he seeks to recover for injuries that were inflicted on him individually rather than on the corporation." *In re Kaplan*, 143 F.3d at 812. So, Kim's claims that M&T fraudulently induced him into signing the Unlimited Guaranty, which he signed in his individual capacity, are thus not barred by the derivative injury rule. *See PNC Bank, N.A. v. Star Grp. Commc'ns, Inc.*, No. 15-5108, 2017 WL 3638763, at *4 (D.N.J. Aug. 24, 2017) (holding that shareholders' "claims based on allegations that PNC Bank fraudulently induced the [shareholders] themselves to sign personal guarantees . . . are clearly not barred by the derivative injury rule").[3]

***Res Judicata.*** M&T then argues that the "doctrine of res judicata bars Rhee and KKR from asserting claims arising from or related to the New York judgment." (Def. Mov. Br. at 19). Plaintiffs disagree, countering that (i) "KKR never appeared before the New York Supreme Court in Erie County" and thus "there was no adjudication of whether the New York court had personal jurisdiction over KKR"; and (ii) given the state court's ruling "that the New York courts lacked jurisdiction over Kim, the New York court would presumably have held that it lacked jurisdiction over KKR." (Pls. Opp. Br. at 23). Plaintiffs aver that "[t]he same analysis applies to Rhee's claims," because "the issue of the New York courts' personal jurisdiction over Rhee was not 'fully

---

[3] The Court will not address Plaintiffs' assertion in their opposition brief that "even if the Court were to find that Plaintiffs' claims were derivative, Kim and Rhee may assert those claims because KKR is insolvent" (Pls. Opp. Br. at 7), because the Complaint makes no such claims. (*See generally* Compl.). "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Pa. ex. rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

6

or fairly litigated' and was allegedly procured by fraud." (*Id.* at 23-24). Plaintiffs' arguments are unpersuasive.

The Court finds that KKR and Rhee's claims are barred under the doctrine of res judicata. "Under the full faith and credit statute, federal courts afford state court judgments the same preclusive effect as would other courts in that state." *Associated Fin. Corp. v. Kleckner*, No. 09-3895, 2010 WL 3024746, at *3 (S.D.N.Y. Aug. 3, 2010) (citations omitted), *aff'd*, 480 F. App'x 89 (2d Cir. 2012). Under New York law, which applies here, "res judicata . . . bars successive litigation [of all claims] based upon the same transaction or series of connected transactions . . . if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was." *Pennicott v. JPMorgan Chase Bank, N.A.*, No. 16-3044, 2018 WL 1891312, at *4 (S.D.N.Y. Apr. 18, 2018) (quoting *Sheffield v. Sherriff of Rockland Cty. Sherriff Dep't*, 393 F. App'x 808, 811 (2d Cir. 2010)). "[O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Id.* (quoting *Ferris v. Cuevas*, 118 F.3d 122, 126 (2d Cir. 1997)).

Plaintiffs allege that M&T filed the Initial Loan Action against KKR and Rhee in the Supreme Court of New York, Erie County. (Compl. ¶ 29). The parties in that action—KKR, Rhee, and M&T—are also parties here. (*Id.*). The Initial Loan Action was based on the same loan documents and the same forum selection clauses at issue here. (*Id.* ¶¶ 29-30). According to Plaintiffs, KKR and Rhee "raised a defense of lack of personal jurisdiction," but they "lost their challenge and judgment was entered against them for the amount of outstanding debt . . . of $150,458.89, on January 18, 2017." (*Id.* ¶ 30; *see also* D.E. No. 11-7, Order (granting M&T's

7

summary-judgment motion against Rhee and default-judgment motion against KKR). The state court's judgment was on the merits. *See Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 421-22 (S.D.N.Y. 2008) (holding that, under New York law, a state court's decision granting a summary-judgment motion is a final decision on the merits for res judicata purposes); *Clark v. Cavalry Portfolio Servs., LLC*, No. 17-0099, 2017 WL 6757224, at *3 (S.D.N.Y. Dec. 29, 2017) (holding that, under New York law, "a default judgment . . . has res judicata effect equal to that of a judgment on the merits"). "If plaintiffs were unhappy with the result of that proceeding, the proper recourse was a state court appeal." *Yeiser*, 535 F. Supp. 2d 422. "Because plaintiffs could have presented the same claims they now assert . . . as defenses or counterclaims in the [state] action . . . , the doctrine of res judicata bars this litigation against [M&T] who was the state court plaintiff." *Id.*

As a result, KKR and Rhee's instant claims against M&T must be dismissed. The Court now turns to the surviving portion of the Complaint—Kim's claims under the Unlimited Guaranty.

***Forum Selection Clause.*** M&T argues that "the forum selection clause at issue in this case is valid," and thus "M&T's exercise of its rights under the permissive forum selection clause was not a secret, dubious, or deceptive act, as Plaintiffs allege." (Def. Mov. Br. at 10). Instead, M&T "filed suit against Plaintiffs in New York, as it was permitted to do." (*Id.*). M&T posits that "[b]ecause the entirety of Plaintiffs' Complaint is premised on the incorrect notion that the forum selection clause is mandatory rather than permissive, Plaintiffs' Complaint necessarily fails as a matter of law." (*Id.* at 11).

Plaintiffs concede that "forum selection clauses are presumptively valid and enforceable," but counter that the clause at issue is invalid because (i) it is a result of "fraud or overreaching"; (ii) enforcement would violate a strong public policy; and (iii) "enforcement would, in the

8

particular circumstances of the case, result in litigation so seriously inconvenient as to be unreasonable." (Pls. Opp. Br. at 3-4) (internal quotation marks and citations omitted). Plaintiffs allege that they "were misled into acquiescing to M&T's forum selection clause under a misapprehension of the meaning M&T would later put upon that clause, once litigation commenced." (*Id.* at 5). Specifically, they point to their "allegations of fraudulent inducements into accepting a forum selection clause that appeared to apply only to New Jersey Courts, when the secret intent of M&T was to bring all litigation in Buffalo New York." (*Id.*).

"A forum selection clause is enforceable only if it is mandatory—providing the sole forum available for resolution of the claims, rather than permissive—providing one of many possible fora." *Nitterhouse Concrete Prod., Inc. v. Dobco Grp., Inc.*, 305 F. Supp. 3d 580, 587 (D.N.J. 2018) (citing *Wall St. Aubrey Golf, LLC v. Aubrey*, 189 F. App'x 82, 85 (3d Cir. 2006) and *Union Steel Am. Co. v. M/V Sanko Spruce*, 14 F. Supp. 2d 682, 687 (D.N.J. 1998)). A mandatory clause "identifies a particular state or court as having exclusive jurisdiction over disputes arising out of parties' contract and their contractual relationship." *Asphalt Paving Sys., Inc. v. Gen. Combustion Corp.*, No. 13-7318, 2015 WL 167378, at *5 (D.N.J. Jan. 13, 2015) (internal quotation marks and citation omitted). A permissive clause, on the other hand, "merely specifies the court empowered to hear litigation and, in effect, allows parties to air any dispute in that court without requiring them to do so." *Selective Way Ins. Co. v. Glasstech, Inc.*, 191 F. Supp. 3d 350, 360 n.17 (D.N.J. 2016) (internal quotation marks and citation omitted).

To determine whether a provision is mandatory, "a court's paramount consideration is the intent of the parties," guided by the "plain language of the agreement." *Wall St. Aubrey Golf, LLC*, 189 F. App'x at 85 (quoting *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1009 (3d Cir. 1980)). In interpreting a forum selection clause, the Court must initially look to the

9

contract provision at issue to determine whether it is "unambiguous"—i.e., "reasonably capable of only one construction." *John Wyeth & Brother Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997). "However, contract language is ambiguous when it admits of more than one reasonable construction." *Wall St. Aubrey Golf, LLC*, 189 F. App'x at 85 (citing *Mellon Bank, N.A.*, 619 F.2d at 1011). "Where the provision is clear and unambiguous, we determine its proper construction as a matter of law." *Id.* (citing *Polish Am. Machinery Corp. v. R.D. & D. Corp.*, 760 F.2d 507, 512 (3d Cir. 1985)). "The court should avoid ambiguities, if the plain language of the contract permits and should not torture the language to create ambiguities." *Id.* (quoting *First State Underwriters Agency of New England Reinsurance Corp. v. Travelers Ins. Co.*, 803 F.2d 1308, 1311 (3d Cir. 1986)) (cleaned up).[4]

Applying these rules to the forum selection clause in the Unlimited Guaranty, the Court finds that the clause is unambiguous and nothing in the plain language of the clause suggests exclusivity. Indeed, the clause specifically contains non-mandatory, permissive language stating that Kim, as the guarantor, "irrevocably submits to the *nonexclusive* jurisdiction of any Federal or state court sitting in New Jersey, over any suit, action or proceeding arising out of or relating to this Guarant[y]." (Compl. ¶ 28 (emphasis added)); *see Camelot Entm't Inc. v. Incentive Capital LLC*, No. 11-2323, 2011 WL 4477317, at *2 (C.D. Cal. Sept. 27, 2011) (finding "non-mandatory" and "permissive language stating that [plaintiff] agrees to submit to the nonexclusive jurisdiction of any Utah state or federal court sitting in Salt Lake City, Utah, over any action or proceeding arising out of or relating to this Note"). Plaintiffs claim that "[t]he 'plain language' of this

---

[4] "A forum selection clause is presumptively valid and enforceable, unless the party resisting enforcement can 'make a strong showing, either that the forum thus selected is so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court, or that the clause was procured through fraud or overreaching.'" *Int'l Bus. Software Sols., Inc. v. Sail Labs Tech., AG*, 440 F. Supp. 2d 357, 362 (D.N.J. 2006) (quoting *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991)).

provision states that the guarantor submits only to the nonexclusive jurisdiction of the New Jersey courts." (Pls. Opp. Br. at 6). But the clause does not employ the term "only," nor does it use the words "exclusive," "shall," "must," or any other terms that might suggest exclusivity. (*See* Compl. ¶ 28).

The Court agrees with Plaintiffs, however, that the clause "could not have the 'plain meaning' that the M&T loan guarantor must submit to suit in all other jurisdictions, regardless of the guarantor's lack of minimum contacts with M&T's chosen venue." (Pls. Opp. Br. at 6). But the Court's holding today does not, as Plaintiffs posit, "convert this clause into a limitless consent to jurisdiction anywhere in the country, or the world." (*Id.*). On the contrary, any non-New Jersey court where M&T sues under the Unlimited Guaranty may exercise personal jurisdiction over Kim only where "minimum contacts" exist so that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).[5] Indeed, Plaintiffs' Complaint reveals that the New York Supreme Court dismissed M&T's prior action against Kim for precisely that reason—lack of personal jurisdiction. (Compl. ¶ 46; D.E. No. 1-5, Compl. Ex. D at 2 ("The Court finds that CPLR 302(1)(a) does not apply and the Court does not have long-arm jurisdiction.")).

The Court is unpersuaded by Plaintiffs' allegation that "Plaintiffs were misled into acquiescing to M&T's forum selection clause under a misapprehension of the meaning M&T would later put upon that clause, once litigation was commenced." (Pls. Opp. Br. at 5). Plaintiffs' "misapprehension," whether a result of their failure to read the clause or an ignorance of the

---

[5] *See also Berk v. Thompson*, No. 07-5532, 2008 WL 11383268, at *1 n.1 (D.N.J. Apr. 24, 2008) (noting that "the court must determine whether the exercise of personal jurisdiction complies with the Due Process Clause of the Constitution").

clause's obligation, does not invalidate a forum selection clause. *See Park Inn Int'l, L.L.C. v. Mody Enterprises, Inc.*, 105 F. Supp. 2d 370, 374 (D.N.J. 2000) ("A failure to read a contract will not excuse a party who signs it, nor will the party's ignorance of its obligation."). And M&T's "[f]ailure to explain the terms of an agreement does not constitute fraud, overreaching or unconscionability so as to void a forum selection clause." *Id.* (citation omitted).

Even giving Plaintiffs every favorable inference, the Court still finds that the forum selection clause in the Unlimited Guaranty (which is identical in each agreement) is permissive and thus does not vest jurisdiction only in New Jersey. Because the clause is permissive, the Court agrees with M&T that "M&T's exercise of its rights under the permissive forum selection clause was not a secret, dubious, or deceptive act." (Def. Mov. Br. at 10). Kim's claims—all premised on either M&T's alleged misrepresentations of the permissive forum selection clause that provides for the "nonexclusive" jurisdiction of New Jersey courts or M&T's alleged omission of its intent to file claims elsewhere (as is permitted by the permissive forum selection clause)—therefore must be dismissed.

***Conclusion.*** For these reasons, M&T's motion to dismiss Plaintiffs' Complaint is GRANTED and Plaintiffs' Complaint is dismissed *without prejudice*. To the extent that Plaintiffs can cure the deficiencies noted in this Memorandum, they may file an amended complaint within 30 days. Failure to do so will result in dismissal *with prejudice*. Given its ruling, the Court need not address the parties' alternative arguments.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**